1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re:

SALESFORCE.COM                                    No. C 04-03009 JSW
SECURITIES LITIGATION

                                                  **ORDER GRANTING MOTION TO
                                                  DISMISS**

_____/

   Now before the Court is the motion filed by Defendants salesforce.com, inc. (the
"Company"), Marc R. Benioff and Steve Cakebread (collectively, "Defendants") to dismiss the
Corrected and Superseding First Amended Class Action Complaint (the "Complaint").  Having
carefully reviewed the parties' papers and considered their arguments and the relevant legal
authority, and good cause appearing, the Court hereby GRANTS Defendants' motion to dismiss
without leave to amend.

                              **BACKGROUND**

   In this federal securities class action, Plaintiff Chuo Zhu, representing a purported class
of purchasers of the common stock of the Company between June 23, 2004 and July 21, 2004,
alleges that the Company's failure to disclose an internal earnings forecast for fiscal year 2005
(ending January 31, 2005), developed prior to the start of the fiscal year and predicting diluted
earnings per share ("EPS") of breakeven 3 cents, constitutes a violation of the Securities
Exchange Act of 1934.

1    Founded in 1999, the Company provides on-demand, web-based information

2    management, or customer relationship management ("CRM") solutions, to companies of all

3    sizes on a subscription basis. (Complaint at ¶¶ 2, 35.) The Company went public in a highly

4    publicized initial public offering ("IPO") on June 23, 2004. (*Id.* at ¶¶ 6, 57.)

5    In advance of the IPO, the Company filed with the SEC a Form S-1 Registration

6    Statement and amendments which disclosed the estimated diluted earnings per share by fiscal

7    year. (*See* Complaint at ¶ 60; Main Decl., Ex. A at 23, F-4, F-12.) The Registration Statement

8    also disclosed that fiscal year 2004 earnings benefitted from an extraordinary, non-recurring

9    item, the abandonment of office lease space in San Francisco. (*See* Declaration of Claudia N.

10   Main ("Main Decl."), Ex. A at 27.) When that non-recurring item is excluded from the

11   calculation, fiscal year 2004 earnings would have been 1 cent.

12   The IPO price of the Company's stock was $11.00. (*See* Complaint at ¶ 57.) After the

13   passage of nearly one month, on July 20, 2004, the stock price was $16.06. (*See id.* at ¶ 15.)

14   On July 21, 2004, Defendant Cakebread provided securities analysts with internal guidance of

15   the fiscal years 2005 for the first time. The internal guidance indicated that the Company had

16   predicted a fiscal 2005 net income of breakeven to 3 cents a share and revenue of $160 to $165

17   million. (*See id.* at ¶¶ 10, 78, 80, 81.) Cakebread also indicated that the Company had been

18   using the guidance internally since February 1, 2004. (*See id.* at ¶¶ 10, 79, 81.) The next day,

19   the Company's stock price closed at $11.42, reflecting a 29% decline from the previous days'

20   closing price of $16.06. (*See id.* at ¶¶ 15, 83.)

21   On February 17, 2005, the Company announced its actual results for fiscal year 2005.

22   The revenues for the year were $176 million, 84% higher than fiscal year 2004 revenues. (See

23   Main Decl., Exs. B, C at 19, 51.) Diluted earnings per share were 7 cents, or 75% higher than

24   the fiscal year 2004 diluted earnings. (*See id.*)

25   The Court will address other specific facts relevant to this motion as they are pertinent

26   to the analysis.

27

28

*United States District Court*
For the Northern District of California

2

**United States District Court**
For the Northern District of California

1

**ANALYSIS**

2    Rule 10b-5 makes it unlawful for any person to use interstate commerce:

3    (a)    To employ any device, scheme, or artifice to defraud;
     (b)    To make any untrue statement of material fact or to omit to state a material fact
4           necessary in order to make the statements made, in light of the circumstances
            under which they were made, not misleading, or;
5    (c)    To engage in any act, practice, or course of business that operates or would
            operate as a fraud or deceit upon any person, in connection with the purchase or
6           sale of any security.

7    17 C.F.R. § 240.10b-5.

8    To plead a claim under section 10(b) and Rule 10b-5, a plaintiff must allege (1) a

9    misrepresentation or omission, (2) of material fact, (3) made with scienter, (4) on which the

10   plaintiff justifiably relied, (5) that proximately caused the alleged loss. *Binder v. Gillespie*, 184

11   F.3d 1059, 1063 (9th Cir. 1999). Additionally, as in all actions alleging fraud, Plaintiff must

12   state with particularity the circumstances constituting fraud. *Greebel v. FTP Software, Inc.*, 194

13   F.3d 185, 193 (9th Cir. 1999); Fed. R. Civ. P. 9(b).

14   Plaintiff also claims that individual defendants, Chief Executive Officer Marc R. Benioff

15   and Chief Financial Officer Steve Cakebread, are liable pursuant to Section 20(a) of the

16   Securities Exchange Act, which provides for derivative liability for those who control others

17   found to be primarily liable under the provisions of that act. *In re Ramp Networks, Inc. Sec.*

18   *Lit.*, 201 F. Supp. 2d 1051, 1063 (N.D. Cal. 2002). Where a plaintiff asserts a Section 20(a)

19   claim based on an underlying violation of section 10(b), the pleading requirements for both

20   violations are the same. *Id.*

21   **A.    Applicable Pleading Standards.**

22   **1.    Rule 12(b)(6).**

23   A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a

24   claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss should

25   not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts

26   supporting his or her claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also De La Cruz*

27   *v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).

28

3

**United States District Court**
For the Northern District of California

1

2.      **Private Securities Litigation Reform Act.**

2          In order to limit the number of frivolous private securities lawsuits, Congress enacted

3     the Private Securities Litigation Reform Act ("PSLRA") in December of 1995, and created

4     heightened pleading standards for such lawsuits.  15 U.S.C. § 78u-4(b).  The PSLRA requires

5     that "the complaint shall specify each statement alleged to have been misleading, the reason or

6     reasons why the statement is misleading, and, if an allegation regarding the statement is made

7     on information and belief, the complaint shall state with particularity all facts on which that

8     belief is formed."  15 U.S.C. § 78u-4(b)(1)(B).  Furthermore, the PSLRA requires that the

9     plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted

10    with the required state of mind."  15 U.S.C. § 78u-4(b)(2).

11         The heightened standard set by the PSLRA was intended to put an end to securities

12    fraud lawsuits that plead "fraud by hindsight."  *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d

13    970, 988 (9th Cir. 1999).  "The PSLRA significantly altered pleading requirements in private

14    securities fraud litigation by requiring that a complaint plead with particularity both falsity *and*

15    scienter."  *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084 (9th Cir. 2002) (citing *Ronconi

16    v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)) (emphasis added).  "Thus the complaint must

17    allege that the defendant made false or misleading statements either intentionally or with

18    deliberate recklessness or, if the challenged representation is a forward looking statement, with

19    'actual knowledge . . . that the statement was false or misleading.'"  *Id.* at 1085 (citing 15

20    U.S.C. § 78u-5(c)(1)(B)(I)).  This is often accomplished "by pointing to inconsistent

21    contemporaneous statements or information (such as internal reports) made by or available to

22    the defendants."  *Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (quoting *In

23    re GlenFed Sec. Lit.*, 42 F.3d 1541, 1549 (9th Cir. 1991) (*en banc*)); *see also id.* at 994

24    (discussing insufficiency of plaintiffs' allegations with regard to the non-disclosure of

25    confidential non-public information).

26         Under the PSLRA, a complaint is still construed in the light most favorable to the non-

27    moving party and all material allegations in the complaint are taken to be true.  *Silicon

28    Graphics*, 183 F.3d at 983.  To determine whether Plaintiff has pled a strong inference of

4

United States District Court

For the Northern District of California

1  scienter, however, "the court must consider all reasonable inferences to be drawn from the

2  allegations, including inferences unfavorable to the plaintiffs." *Gompper v. VISX, Inc.*, 298

3  F.3d 893, 897 (9th Cir. 2002).  The Court "should consider all the allegations in their entirety,

4  together with any reasonable inferences therefrom, in concluding whether, on balance, the

5  plaintiffs' complaint gives rise to the requisite inference of scienter." *Id.*  "Conclusory

6  allegations of law and unwarranted inferences, however, are insufficient to defeat a motion to

7  dismiss." *In re Northpoint Communications Group, Inc. Sec. Litig.*, 221 F. Supp. 2d 1090, 1094

8  (N.D. Cal. 2002).

9        Finally, the Court may consider the facts alleged in the complaint, documents attached

10  to the complaint, documents relied upon but not attached to the complaint when the authenticity

11  of those documents is not questioned, and other matters for which the Court can take judicial

12  notice.  *Id.*; *see also Silicon Graphics*, 183 F.3d at 986.

13        **3.      Request for Judicial Notice.**

14        Both Plaintiff and Defendants request that the Court take judicial notice of documents

15  that the Company filed with the SEC, news articles and press releases, and analysts' reports, all

16  of which are either publicly filed documents, or are referenced in the Complaint or are integral

17  to the allegations contained in the complaint.  Neither party disputes the accuracy of the

18  documents attached to the other's request, and the requested documents are the types of

19  documents of which this Court properly may take judicial notice.  *See, e.g., In re Silicon*

20  *Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 758 (N.D. Cal. 1997); *aff'd*, 183 F.3d 970 (9th Cir.

21  1990) (taking judicial notice of publicly available documents filed with the SEC); *see also In re*

22  *Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1076 (N.D. Cal. 2003) (court "may properly

23  take judicial notice of SEC filings and documents expressly referenced" in a complaint); *see*

24  *also Parrino v. FHP, Inc.,* 146 F.3d 699, 705-06 (9th Cir. 1998) (granting judicial notice of

25  documents whose authenticity is not contested and which are crucial to the claims although not

26  explicitly incorporated in the complaint).  Accordingly, the Court GRANTS both Plaintiff's and

27  Defendants' requests for judicial notice of the attached documents.

28

**United States District Court**
For the Northern District of California

B.     **Alleged Nondisclosure of Internal Forecast is Not Actionable.**

1.     **Alleged Omission of Internal Forecast Was Not Misleading.**

To plead a claim under section 10(b) and Rule 10b-5, a plaintiff must allege (1) a misrepresentation or omission, (2) of material fact, (3) made with scienter, (4) on which the plaintiff justifiably relied, (5) that proximately caused the alleged loss. *Binder*, 184 F.3d at 1063. Here, Plaintiff alleges that the Company's failure to disclose an internal earnings forecast for fiscal year 2005 prior to the IPO was a material omission that caused Plaintiff to purchase stock at an artificially inflated price. To be actionable under Section 10(b) and Rule 10b-5, however, an alleged omission must render some affirmative public statement misleading. In order for an omission to be misleading, "it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *See Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (citing *McCormick v. The Fund American Cos.*, 26 F.3d 869, 880 (9th Cir. 1994)). In order for Plaintiff to survive a motion to dismiss under the pleading standards of the PSLRA, the complaint must specify the reasons why the statements or omissions made by Defendants "were misleading or untrue, not simply why the statements were incomplete." *Id.* (citing 15 U.S.C. § 78u-4(b)(1); *Ronconi*, 253 F.3d at 429).

Plaintiff alleges that the earnings per share figures "led investors to believe that the Company was poised to continue the trend of increasing earnings into [fiscal year 2005], ending January 31, 2005." (Opp. at 4.) In addition, Plaintiff alleges that analysts and reporters were forecasting a rise in earnings per share in the fiscal year 2005 based primarily on the Company's past performance. (*Id.*, citing Complaint at ¶¶ 75, 49.) The core allegation in the Complaint is the Company's omission of the internal forecast gave investors the impression that future earnings would rise in a manner consistent with the Company's historical upward trend in earnings. (Complaint at ¶¶ 9, 58, 59, 62, 63.) However, as Defendants point out, the Company's actual fiscal year 2005 results demonstrated just that – a continuation of the upward trend in earnings. On February 17, 2005, the Company announced its actual results for fiscal year 2005 which indicated that revenues were $176 million, 84% higher than fiscal year 2004.

6

1   (*See* Main Decl., Exs. B., C at 19, 51.)  This growth in revenues is comparable to the previous

2   year's increase of 88% in revenues.  (*See* Complaint at ¶ 60.)  Because the actual, existing state

3   of affairs turned out to be an upward trend in earnings, the nondisclosure of the internal forecast

4   portending a decline in revenues, did not affirmatively create an impression of a state of affairs

5   that differed in a material way from the one that actually existed.  Therefore, Plaintiff has failed

6   to set forth a legal theory that is actionable based on the nondisclosure of the internal forecast.

**2.      Defendants Owe No Legal Duty to Disclose the Internal Forecast.**

8          Further, even if the fiscal 2005 forecast announced on July 21, 2004 did reflect a

9   downward departure from an upward trend, Plaintiff could still not state a claim for alleged

10  failure to disclose the forecast.  The law imposes no duty to disclose internal forecasts in the

11  context of an initial public offering.[1]  *See, e.g., In re VeriFone Sec. Litig.*, 11 F.3d 865, 869 (9th

12  Cir. 1993) (holding that, absent allegations that the Company withheld financial information

13  from which forecasts are typically derived, the alleged omissions did not render other statement

14  misleading); *see also Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1221 (9th Cir. 1980) (holding

15  that the SEC does not require a company to disclose financial projections).  The nondisclosure

16  of the internal forecast does not render the Company's disclosure of historical results for the

17  fiscal year 2002 through fiscal year 2004 in the Registration Statement filed before the SEC in

18  preparation for the initial public offering misleading.  *See In re Convergent Tech. Sec. Litig.*,

19  948 F.2d 507, 513 (9th Cir. 1991) (rejecting claim that historical reports of past growth implied

20  future growth); *see also In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1406 (9th Cir. 1996)

21  (holding that "a company is not required to forecast future events or to caution 'that future

22  prospects [may not be] as bright as past performance.'")

23

24

25

26          [1] The Court finds the analogy of an IPO to insider trading by the company employed
27  by the First Circuit in *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1203-04 (1st Cir. 1996), to be unhelpful.  Here, Plaintiff has not alleged a claim for insider trading, and in any event, if the abstain or disclose rule applied in the context of such a claim, Plaintiff would
28  still bear the burden of pleading and proving that the alleged omission rendered a statement misleading.  *See, e.g, McCormick*, 26 F.3d at 880.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1

           **b.**       **Regulation S-K, Item 303, Instruction 7.**

2

       Regulation S-K provides that IPO prospectuses and registration statements must contain

3

a section on management's discussion and analysis of financial condition and results of

4

operations in a section called "Management Discussion." *See generally* 17 C.F.R. § 229.10*, et*

5

*seq*.  Item 303 addresses what must be included in the Management Discussion and requires, in

6

part, that the section "[d]escribe any known trends or uncertainties that have had or that the

7

registrant reasonably expects will have a material favorable or unfavorable impact on net sales

8

or revenues or income from continuing operations."  17 C.F.R. § 229.303(a)(3)(ii).

9

       Until its revision in 2003, Instruction 7 to Regulation S-K clearly indicated that

10

registrants were not required to disclose forecasts in their registration statements.  *See* 17 C.F.R.

11

§ 229.303(a), inst. 7, 7 Fed. Sec. L. Rep. (CCH) ¶ 71,033, at 61,867-3 (2003) ("Registrants are

12

encouraged, but not required, to supply forward-looking information"); *see also VeriFone*, 11

13

F.3d at 870 (holding that the "known trends or uncertainties" language of Item 303 did not

14

include forecasts).  In its revisions to the instructions in February 2003, Congress eliminated the

15

sentence regarding the lack of obligation to supply forward-looking information, in order, at

16

least in part, to be consistent with other revisions to the regulations requiring that companies

17

disclose forward-looking information regarding the valuation of assets held in off-balance sheet

18

entities.  *See* Disclosure in Management's Discussion and Analysis About Off-Balance Sheet

19

Arrangements and Aggregate Contractual Obligations, Rel. Nos. 33-8182, 34-47264, 68 Fed.

20

Reg. 5982, 5992-93 (February 5, 2003).

21

       Plaintiffs cite a post-revision unpublished case from the Southern District of California

22

in which the court found that "because Section 11 [of the Securities Act] imposes liability if a

23

registrant 'omits to state a material fact required to be stated' in the registration statement, 'any

24

omission of facts required to be stated' under Item 303 will produce liability under Section 11."

25

*In re Surebeam Corp. Sec. Litig*., 2004 U.S. Dist. LEXIS 26951, *40 (S.D. Cal. December 30,

26

2004).  The *Surebeam* court analyzed the issue of omission of information required to be

27

disclosed under Item 303 only with respect to the claim under Section 11.  *Id*.  The separate

28

analysis of the 10b-5 claim in that case provides no indication whether the court even

United States District Court

For the Northern District of California

1    considered if a violation of Item 303, standing alone, could support a claim under Rule 10b-5.

2    *Id.* at \*47-51.  In any event, the *Surebeam* court conclusively found that, under their 10b-5

3    claim, plaintiffs had adequately pleaded with particularity that the prospectus contained

4    "misleading statements and omissions."  *Id.* at \*51.  Because this Court has found that the

5    omissions alleged were not misleading, the Court does not need to address whether the

6    unpublished interpretation of the applicability of Item 303 to Section 11 claims should apply to

7    Plaintiff's Rule 10b-5 claim.  Also, the Court notes that "demonstration of a violation of the

8    disclosure requirements of Item 303 does not lead inevitably to the conclusion that such

9    disclosure would be required under Rule 10b-5.  Such a duty to disclose must be separately

10   shown."  *See Alfus v. Pyramid Tech.*, 764 F. Supp. 598, 608 (N.D. Cal. 1991); *see also In re*

11   *Caere Corporate Sec. Litig.*, 837 F. Supp. 1054, 1061 n.4 (N.D. Cal. 1993) ("The fact that

12   Defendants may or may not have violated Item 303 is irrelevant to Plaintiffs' Rule 10b-5

13   claims.")

14   **C.       Control Person Liability**

15          Section 20(a) of the Securities and Exchange Act provides derivative liability for those

16   who control others found to be primarily liable under the Act.  *In re Ramp Networks*, 201 F.

17   Supp. 2d at 1063.  Here, Plaintiff asserts that Benioff and Cakebread are liable under this

18   section because of an underlying violation of Section 10b.  Because Plaintiff has not adequately

19   alleged facts to support the underlying 10b-5 violation, the Section 20(a) claim must be

20   dismissed as well.  *Id.*; *America West Holding Corp.*, 320 F.3d at 945.

21   **D.       Leave to Amend.**

22          Motions to dismiss are viewed with disfavor and rarely should be granted, and Federal

23   Rule of Civil Procedure 15(a) provides that leave to amend is to be freely given when justice

24   requires.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

25   "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de

26   novo review that the complaint could not be saved by amendment."  *Id.* (citing *Chang v. Chen*,

27   80 F.3d 1293, 1296 (9th Cir. 1996)).  The Ninth Circuit has admonished that because the

28   standards in the PSLRA are high, "[a]dherence to these principles is especially important in the

United States District Court

For the Northern District of California

1   context of the PSLRA." *Id.* Ultimately, however, it is within the Court's discretion to

2   determine whether to grant a plaintiff leave to amend. *Vantive*, 283 F.3d at 1097-98.

3        Here, because the basic facts are alleged and fail to state an actionable claim, the Court

4   concludes that Plaintiff cannot cure the flaws in its pleading. *See Lipton v. Pathogenesis Corp.*

5   284 F.3d 1027, 1039 (9th Cir. 2002).  Because any amendment would be futile, there is no need

6   to prolong the litigation by permitting further amendment. *See Klamath-Lake Pharmaceutical*

7   *Ass'n v. Klamath Med. Serv. Bureau,* 701 F.2d 1276, 1293 (9th Cir.1983) (futile amendments

8   should not be permitted); *Silicon Graphics,* 183 F.3d at 991 (denying leave to amend because

9   defects in pleadings could not be cured by amendment).

10                                **CONCLUSION**

11        For the foregoing reasons, Defendants' motion to dismiss is GRANTED without leave

12   to amend.  Plaintiff has failed to state a claim upon which relief can be granted under Sections

13   10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and the

14   rules and regulations promulgated thereunder.  The Clerk is directed to close the file.

17        **IT IS SO ORDERED.**

19   Dated:  December 22, 2005                    _____
20                                               JEFFREY S. WHITE
                                                 UNITED STATES DISTRICT JUDGE